**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

DARIO BERNARD, individually and on
behalf of all others similarly situated,

        Plaintiff,

    v.

RADIUS GLOBAL SOLUTIONS, LLC,

        Defendant.

:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION

No. 21-3605

## MEMORANDUM OPINION

**Schmehl, J.**  /s/ JLS                                      **May  17, 2022**

## I.  INTRODUCTION

Before the Court is the motion to dismiss of Defendant, Radius Global Solutions, LLC ("RGS"). Plaintiff, Dario Bernard, filed a Complaint against RGS for violations of the Fair Debt Collection Practices Act ("FDCPA"). *See* ECF No. 1. Based upon the parties' submissions, Defendant's motion is granted, and this matter will be dismissed.

## II.  BACKGROUND

This action is based upon a letter ("the Letter") that RBS sent Plaintiff to collect a debt ("the Debt"). See ECF No. 1, Ex. A. The Letter provides two options for Plaintiff to settle the Debt for a reduced amount: the first, offering to resolve the Debt for three installment payments, with the first payment being due in 45 days from the date of the Letter; and the second, offering to resolve the Debt for a single payment due within 45 days from the date of the Letter. *Id.* Underneath these offers, the Letter states: "The preceding information does not affect your rights set forth below." *Id.* Underneath this statement, the Letter states:

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

ECF No. 1 (hereinafter, the "validation notice").

Plaintiff argues that the offers to resolve the debt "overshadowed" his dispute and validation rights. *Id*. at ¶¶ 30-32. Plaintiff also argues that the Letter was "deceptive" because it did not specify whether the 45-day deadline to make payment towards the offers would be extended if Plaintiff disputed the Debt. *Id*. at ¶ 35.

Defendant filed a Motion to Dismiss Plaintiff's Complaint. After a review of all relevant documents and caselaw, Defendant's motion will be granted and this matter will be dismissed.

## III.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) governs the Court's motion to dismiss analysis. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burch v. Millberg Factors, Inc*., 662 F.3d 212, 220-21 (3d Cir. 2011) (*citing Iqbal,* 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's

2

liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"
*Id.* (*quoting Twombly*, 550 U.S. at 557).

The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1)
"[i]t must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should
identify allegations that, 'because they are no more than conclusions, are not entitled to the
assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court
should assume their veracity and then determine whether they plausibly give rise to an
entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016)
(*quoting Iqbal*, 556 U.S. at 675, 679). *See Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d
560, 563 (3d Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010).

## IV.    **DISCUSSION**

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt
collectors." 15 U.S.C. § 1692. The FDCPA therefore prohibits a range of abusive practices and
imposes certain affirmative disclosure obligations on debt collectors. To aid enforcement, the
FDCPA "provides consumers with a private cause of action against debt collectors who fail to
comply with the Act." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006). As a remedial
statute, the FDCPA is construed broadly to give full effect to its purpose. *Id.*; *Douglass v.
Convergent Outsourcing*, 765 F.3d 299, 302 (3d Cir. 2014).

To state a claim under the FDCPA, a plaintiff must plausibly allege that (1) he or she is a
consumer, (2) the Defendant is a debt collector, (3) Defendant's challenged practice involves an
attempt to collect a debt covered by the FDCPA, and (4) Defendant has violated the FDCPA
when seeking to collect the debt. In the instant matter, the only dispute concerns the fourth

element, whether the Letter sent by RGS failed to adequately convey required notices regarding the right to dispute the debt in violation of either Section 1692g or 1692e of the Act.

Section 1692g of the FDCPA requires that debt collectors provide the following information to consumers in their initial communication:

> (3) A statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) A statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;
>
> 5) A statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). Paragraphs 3 through 5 above contain what is called the validation notice – the statements that inform the consumer how to obtain verification of the debt and that he has thirty days in which to do so. When a consumer disputes a debt or requests the identity of the original creditor, Section 1692g(b) mandates that "the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector." Finally, Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. 1692e.

"[W]hether language in a collection letter contradicts or overshadows the validation notice is a question of law." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 353 n.2 (3d Cir. 2000).

The Third Circuit has held that "statutory notice must not only explicate a debtor's rights; it must do so effectively." *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir.1991), *overruled on other grounds by Riccio v. Sentry Credit, Inc.*, 954 F.3d 582 (3d Cir. 2020). "In order to comply with the requirements of section 1692g, more is required than the mere inclusion of the statutory debt validation notice in the debt collection letter—the required notice must also be conveyed effectively to the debtor." *Wilson*, 225 F.3d at 354 (citing *Payco–General*, 943 F.2d at 484). The validation notice accordingly "must be in print sufficiently large to be read, and must be sufficiently prominent." *Graziano*, 950 F.2d at 111 (citing *Swanson v. Southern Oregon Credit Serv.*, 869 F.2d 1222, 1225 (9th Cir. 1988)). "More importantly for present purposes, the notice must not be overshadowed or contradicted by accompanying messages from the debt collector." *Id*.

Compliance with the FDCPA is measured from the perspective of the "least sophisticated debtor." *Graziano*, 950 F.2d at 111. This standard ensures that the statute "protects all consumers, the gullible as well as the shrewd." *Caprio*, 709 F.3d at 149. "The least sophisticated debtor standard is therefore 'less demanding than one that inquires whether a particular debt collection communication would mislead or deceive a reasonable debtor.' Nevertheless, 'the standard does not go so far as to provide solace to the willfully blind or non-observant,' and so 'the least sophisticated debtor is bound to read collection notices in their entirety.' " *Jewsevsky v. Financial Recovery Services, Inc.*, 704 F. App'x 145, 148 (3d Cir. 2017) (quoting *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 298, 299 (3d Cir. 2008)). "The standard is an objective one, 'meaning that the specific plaintiff need not prove that she was actually confused or misled, only that the objective least sophisticated debtor would be.' " *Norman v. Allied Interstate*, 310 F. Supp. 3d 509, 517 (E.D. Pa. 2018) (quoting *Tatis v. Allied Interstate,*

*LLC.*, 882 F.3d 422, 427 (3d Cir. 2018)). Under this standard, a collection communication violates the FDCPA when it misleads a plaintiff into thinking he has a legal obligation to pay a time-barred debt, *Tatis*, 882 F.3d at 428, or "when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Caprio*, 709 F.3d at 149.

### A.      Section 1692g claims

Plaintiff claims that RGS "overshadowed" his right to 30 days to dispute the Debt and request validation because the Letter did not explain whether Plaintiff's disputing the Debt would affect the deadline to accept the offers to resolve the Debt.

As set forth above, section 1692g(a) requires debt collectors to include written notice of certain rights in the initial communication with a debtor. This is called a validation notice, and it must be "conveyed effectively to the debtor," must be "sufficiently prominent," and cannot be "overshadowed or contradicted by accompanying messages or notices from the debt collector." *Wilson*, 225 F.3d at 354, 355. If the debt collector complies with the validation notice requirements, "[t]here is nothing improper about making a settlement offer." *Campuzano-Burgos v. Midland Credit Mgmt., Inc*., 550 F.3d 294, 299 (3d Cir. 2008). A settlement offer must not "deceive or mislead the least-sophisticated debtor into believing that she has a legal obligation to pay." *Tatis*, 882 F.3d at 430.

"Overshadowing" occurs when correspondence from a debt collector is formatted so the consumer will not see the validation notice at all and be left in the dark about his dispute and/or validation rights. *Jewsevskyj v. Fin. Recovery Servs., Inc.*, 740 F. App'x 145, 148 (3d Cir. 2017). Courts have found such overshadowing when the validation notice is in fine print, in a different font from the rest of the letter, and on the back of the letter with nothing on the front alerting the consumer to the disclosure. *See Wilson*, 225 F.3d at 356; *Hayes v. Collecto, Inc*., 2020 WL

4587985, *5 (W.D. Pa. July 23, 2020), *report and recommendation adopted*, 2020 WL 4584226 (W.D. Pa., Aug. 10, 2020).

"Inconsistency" occurs where the debt collector suggests the consumer must pay the debt before the expiration of the dispute period, rending the consumer's right to 30 days to dispute the debt and request validation effectively illusory. *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991); *Larkin v. Turner*, 2019 WL 6975059, *4 (D.N.J. Dec. 18, 2019). However, courts have routinely held that conduct that gives the consumer the option of disputing the debt or making payment has been held to be consistent with section 1692g. *See Wilson*, 225 F.3d at 351 (finding that letter that contained the required validation notice but stated plaintiff's debt had been placed in "immediate collection" and the defendant was "afford[ing him] the opportunity to pay this bill immediately and avoid further action against [him]" did not violate section 1692g(b)). *See also Eddis v. Midland Funding, LLC*, 2012 WL 664812, * 5 (D.N.J. Feb. 28, 2012).

In the instant matter, a review of the Letter shows that the validation notice is on the front of the Letter and is in the same font, size and color as the rest of the text. ECF No. 1, Ex. A. Further, the validation notice contains all the language required by the statute. *Id.* Accordingly, there is clearly no "overshadowing" at issue in this case.

Next, I examine the instant set of facts to determine if there is a possible inconsistency theory. As discussed above, an inconsistency exists when the debt collector suggests that a consumer is required to pay the debt before the end of the 30-day dispute period. That is not the situation at hand. The Letter did not tell Plaintiff that payment was due "immediately" or by a date within the 30-day dispute period. Rather, the Letter set forth two offers that would allow Plaintiff to resolve the Debt for a reduced amount and gave Plaintiff 45 days to make such a payment. ECF No. 1, Ex. A. As nothing in the Letter suggested that Plaintiff needed to pay the

Debt before the 30-day dispute period ended and forego his validation rights, there is no inconsistency claim in the instant matter.

The Letter clearly complies with the FDCPA and does not raise an "overshadowing" or "inconsistency" issue. As recently stated in a remarkably similar matter, "[T]he fact that the Debt Collection Letter provided Plaintiff with forty days to accept the resolution offer does not overshadow the thirty-day requirement in the validation. Like *Wilson*, the Debt Collection Letter provides Plaintiff with two offers, and there is no demand or threat of legal action if Plaintiff decides not to take the settlement offer." *Rhee v. Client Services*, 2020 WL 4188161, *5 (D.N.J. July 21, 2020) (*citing Wilson*, 225 F.3d at 351). Similarly, the instant Letter gave Plaintiff two options to resolve the Debt but did not threaten legal action or demand payment. There is no inconsistency here that would lead Plaintiff to think he is required to pay the Debt off before the expiration of the 30-day period.

In support of his argument that RGS's offers of payment options in the Letter overshadow the validation notice because he would be unsure of his rights, Plaintiff cites to *Norman v. Allied Interstate, LLC*, 310 F.Supp.3d 509 (E.D. Pa. 2018) (McHugh, J.). In *Norman*, the defendant sent the plaintiff a letter to collect a debt. The letter informed Norman that she had 30 days to dispute the debt and request validation. *Id*. at 512. The letter also stated:

> To make a payment, please telephone us at 866–466–3142 or mail your payment. . . . [Y]our account will be debited on the day we receive your payment. Your check will not be returned.

*Id*. Norman argued:

> "Allied's statement that checks would be debited immediately and would not be returned, coupled with "anticipatory language welcoming payment"—in the absence of any clarifying language—overshadowed the validation notice such that it would leave the least sophisticated consumer uncertain as to how sending a payment would affect her dispute rights. If she sent a payment, would she be giving up her rights to dispute or verify the debt? If she disputed the debt, and

8

> then sent payment (or did both simultaneously), and the debt were found invalid, would Allied return her payment?

*Id*. at 519-20 (emphasis added).

The *Norman* court noted that a request for payment in the same letter as a validation notice "can, but does not necessarily, violate § 1692g." *Id.* at 520. Yet the court denied Allied's motion to dismiss, concluding that Allied needed to include a reconciling statement specifying that Norman could both pay the debt and dispute it and explaining what would happen if she both paid the debt and disputed it. *Id*. The court stated:

> To be sure, Allied's request for payment did not "standing alone" violate the Act. Rather, it was Allied's request for payment and warning that checks would be immediately deposited and not returned, without "explaining that its demand did not override the consumer's rights under section 1692g" that rendered the validation notice ineffective.

*Id*.

However, in *Wilson*, the Third Circuit found no 1692g violation where the letter offered "the opportunity to pay this bill immediately," because the letter "presented [the consumer] with two options: 1) an opportunity to pay the debt immediately and avoid further action, or 2) notify [the collector] within thirty days. . .that he disputes the validity of the debt" and did not "suggest that [the consumer] forego the second option in favor of immediate payment." *Id*. at 356.

I find that *Norman* does not apply to the instant facts because the Letter did not include a statement regarding the immediate deposit of checks or anything similar. Instead, RGS simply requested payment, which does not rise to the level of "overshadowing" according to the Third Circuit and the *Norman* decision itself. Unlike in *Norman*, the Letter here does not leave the least sophisticated consumer uncertain of how RGS's demands fit together with his dispute and validation rights. This Letter is more like the letter in *Wilson* than the letter in *Norman*, where the consumer was presented with the option to make a payment or the option to dispute the validity

of the debt but did not suggest or encourage Plaintiff to forego his right to dispute the debt in favor of immediate payment. Similarly, RGS's letter presented Plaintiff with the option to make a payment or the option to dispute the debt in question but did not attempt to pressure him into making a payment. Further, RGS also gave Plaintiff a 45 day time window in which to pay the debt. Clearly, the payment language contained in Letter does not render the validation notice ineffective.

RGS's silence about what might happen after Plaintiff disputed the debt does not raise an "inconsistency" or "overshadowing" issue because it does not affect whether Plaintiff could exercise his right to dispute the debt as an initial matter. Accordingly, Plaintiff's overshadowing/inconsistency claim under section 1692g must fail.

### B.    Section 1692e Claim

As discussed above, the Letter in question informed Plaintiff that he had 45 days to make payment if he wanted to resolve the Debt for a reduced amount. Plaintiff argues that the Letter was "deceptive" because it did not specify whether he could both pay the Debt and dispute it and did not explain what would happen if he paid the Debt, disputed it and the Debt was then determined to be invalid. In other words, the Letter did not specify if RGS would return the payment that Plaintiff made if the Debt was found to be invalid.

Section 1692e prohibits a debt collector from using "false, deceptive, or misleading" means to collect a debt. 15 U.S.C. § 1692e. To qualify as "false, deceptive, or misleading," the communication must be open to two or more reasonable interpretations, at least one of which is inaccurate. *Wilson*, 225 F.3d at 354. Interpretations that are unreasonable, i.e., bizarre, idiosyncratic, fanciful, unrealistic, etc., do not give rise to liability. *Brown*, 464 F.3d at 453-54; *Campuzano-Burgos*, 550 F.3d at 299.

10

In the instant case, RGS's Letter was not in any way "deceptive" about the deadline to accept the settlement offers. It clearly states that the deadline to accept the offers is 45 days. Plaintiff's theory that the deadline to accept the settlement offers might be extended if he disputed the debt is pure speculation and exactly the type of unreasonable interpretation that does not give rise to liability under section 1692e. Accordingly, Plaintiff's claim that RGS used deceptive means to attempt to collect a debt is dismissed.

## V.    <u>CONCLUSION</u>

For all the foregoing reasons, I find that Plaintiff's Complaint fails to state a claim, Defendant's Motion to Dismiss is granted, and Plaintiff's Complaint is dismissed with prejudice.